IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD. | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25- 1589 (JLH) |
| | ) | |
| NETLIST, INC., | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

## JOINT STATEMENT OF PENDING MATTERS PURSUANT TO LOCAL RULE 81.2

Pursuant to D. Del. LR 81.2 and the Court's January 22, 2026 Oral Order (D.I. 13), Counterclaim-Plaintiff Samsung Electronics Co., Ltd. ("Samsung") and Counterclaim-Defendant Netlist, Inc. ("Netlist") submit this statement identifying all pending matters that require judicial action.

This case originates from a proceeding at the U.S. International Trade Commission ("ITC") that Netlist brought against Samsung and other respondents based on allegations of patent infringement. *See* D.I. 2 ¶¶ 1–4; *In the Matter of Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof*, Inv. No. 337-TA-1472 (I.T.C. Sept. 30, 2025) ("1472 Investigation"). Pursuant to 19 U.S.C. § 1337(c) ("Section 337") and 19 C.F.R. § 210.14(e), Samsung asserted counterclaims in the ITC proceeding alleging violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, violations of Section 17200 of the California Business and Professions Code, and breaches of contract, including based on Netlist's contractual obligation to license its alleged standard-essential patents ("SEPs") on reasonable and non-discriminatory ("RAND") terms (hereinafter, "ITC Counterclaims"). *See* D.I. 3 ¶¶ 181–243. Section 337 required Samsung to remove those counterclaims, "immediately" upon filing them at

the ITC, to a United States district court in which venue exists with regard to any of the counterclaims. *See* 19 U.S.C. § 1337(c). Samsung removed the ITC Counterclaims to this Court. *See* D.I. 2.

The parties state that there are no pending motions that require action by this Court. The parties further state that they have discussed a schedule for resolving the ITC Counterclaims.

As set out below, Samsung requests that the Court set a scheduling conference and enter a schedule, attached hereto as **Exhibit 1**, which parallels the ITC's schedule, because Samsung's ITC Counterclaims seek to address Netlist's improper attempt to obtain relief from the ITC.

Netlist in contrast contends that the Samsung's proposed schedule is an improper and unnecessary attempt to interfere with the pending ITC action, and Samsung's proposed expedited schedule is highly prejudicial to Netlist. To the extent the Court is inclined to issue a schedule at this juncture, it should adopt Netlist's proposal as set forth in **Exhibit 2**.

**<u>Samsung's Request for a Scheduling Conference and Order</u>**

Because this case originated in Netlist's ITC proceeding, and because Samsung seeks relief that bears on the relief Netlist seeks in that proceeding, Samsung submits that the action in this Court merits an expedited schedule that closely parallels the schedule of the ITC proceeding.

As described in Samsung's ITC Counterclaims, Netlist has engaged in conduct—including making unreasonable licensing demands, misleading the memory industry's standard-setting organization (JEDEC), and prosecuting an overzealous worldwide litigation campaign—that violates Section 2 of the Sherman Act, Section 17200 of the California Business and Professions Code, and Netlist's contractual obligations to license its alleged SEPs on RAND terms. *See* D.I. 3 ¶¶ 181–243. The misconduct addressed in the ITC Counterclaims, while broader than Netlist's conduct before the ITC, specifically includes Netlist's request for an ITC exclusion order on

patents that Netlist has alleged are essential or are essential under Netlist's infringement theories—which is an improper attempt to further its scheme to obtain unlawful, supra-RAND licensing royalties. *See, e.g.*, *id.* ¶¶ 17, 40, 135, 137, 153, 193, 202, 219, 243. Netlist seeks through its ITC action to wield its alleged monopoly power to force Samsung into a Hobson's choice: either pay Netlist supra-RAND royalty rates for a license to its alleged SEPs or stop commercializing the accused products entirely. Samsung's ITC Counterclaims allege, among other things, that this effort to enjoin Samsung's products, without Netlist having made a RAND-compliant license offer, is unlawful and a breach of Netlist's RAND commitments. *See, e.g.*, *id.* ¶¶ 203–20.

Federal courts have held that SEP owners must comply with their RAND commitments *before* seeking injunctive relief. *See Telefonaktiebolaget TM Ericsson v. Lenovo (United States), Inc.*, 120 F.4th 864, 878 (Fed. Cir. 2024) (holding that "FRAND commitment precludes Ericsson from pursuing SEP-based injunctive relief unless it has first complied with the commitment's obligation to negotiate in good faith over a license to those SEPs"); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884–85 (9th Cir. 2012) ("Implicit in such a sweeping [RAND] promise is, at least arguably, a guarantee that the patent-holder will not take steps to keep would-be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made."). Accordingly, courts have enjoined patentees from seeking injunctions against alleged infringers before satisfying their RAND obligations. *See Microsoft*, 696 F.3d at 885, 889 (in action involving claims for violation of RAND obligations, affirming grant of anti-suit injunction issued against enforcement of injunctive relief in separate patent infringement action); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1005–

10 (N.D. Cal. 2013) (granting preliminary injunction that barred patentee from enforcing ITC exclusion order until patentee demonstrated compliance with its RAND obligations).[1]

Contrary to Netlist's suggestion below, it is well established that federal courts have the authority to enjoin a party from pursuing patent disputes at administrative tribunals, including the ITC, where the pursuit of such claims violates a contractual obligation of the party. *See, e.g.*, *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) ("district court did not abuse its discretion in granting the preliminary injunction" against patentee proceeding with infringement suit in the ITC that allegedly breached a forum selection clause); *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1326–27 (Fed. Cir. 2000) (reversing denial of preliminary injunction on account of forum selection clause after the district court found that "enjoining [the patentee's] participation would be an impermissible interference with the ITC's statutorily authorized proceedings"); *see also Nippon Shinyaku Co., Ltd. v. Sarepta Therapeutics, Inc.*, 24 F.4th 998, 1001 (Fed. Cir. 2022) (reversing denial of preliminary injunction barring alleged infringer from filing petitions for *inter partes review* with the Patent Trial and Appeal Board on

---

[1]      Netlist's attempt to distinguish these cases is unavailing. First, Netlist asserts that the patentee in *Realtek* did not dispute that its patents were essential. But the accused infringer *did* dispute essentiality. 946 F. Supp. 2d at 1010 (observing that accused infringer was "denying infringement before the ITC"). *Realtek* thus demonstrates that the Court has authority to enjoin Netlist from enforcing any exclusion order if the asserted patents are essential under Netlist's infringement read. Second, in none of these cases did injunctive relief depend on the accused infringer asking the court to set a RAND royalty rate. To the contrary, the Federal Circuit specifically rejected this position in *Ericsson*. 120 F.4th at 875 ("the district court legally erred when it reasoned that, to be dispositive, the domestic suit must necessarily result in a global cross-license"). Third, Netlist attempts to distinguish *Ericsson* and *Microsoft* on the basis that those cases involved foreign anti-suit injunctions. That is backwards. An injunction against a domestic corporation (like Netlist) from enforcing relief obtained from a domestic tribunal (the ITC) is *less* onerous to obtain given that it does not implicate foreign comity concerns, which, as the *Microsoft* court recognized, are difficult and "complex." 696 F.3d at 886 ("[C]omity is not, of course, to be contemplated lightly. Foreign anti-suit injunctions should not be issued routinely.").

account of a forum selection clause).[2] Indeed, the *Realtek* court issued such an injunction where the patentee had not demonstrated compliance with its RAND obligations. 946 F. Supp. 2d at 1009. This Court can and should do the same if Samsung succeeds on its RAND breach of contract claim against Netlist.[3]

Consistent with this precedent, Samsung's ITC Counterclaims seek, *inter alia*, a declaration that "Netlist may not seek or enforce any exclusion order or injunction against Samsung's JEDEC-compliant DIMM and HBM products for alleged infringement of any patents that Netlist must license on RAND terms and conditions." D.I. 3 at 69, ¶ (g). In order for this relief to be appropriately available to Samsung, this Court must have an opportunity to rule *before* Netlist is able to enforce the ITC injunctive relief it seeks. *See Ericsson*, 120 F.4th at 878 ("[I]f the court determines that Ericsson has not complied with [its RAND] obligation, that determination will

---

[2]     Netlist attempts to distinguish these cases on the ground that they involved forum selection clauses. That misses the point. This precedent demonstrates that there is no "separation of powers" issue with this Court enjoining Netlist from pursuing and enforcing an ITC exclusion order to enforce a contractual obligation.

[3]     The regional circuit cases that Netlist cites are inapposite. Samsung does not seek to enjoin the ITC or its proceedings. Rather, Samsung seeks to enjoin a private party (Netlist) from enforcing an exclusion order on the basis of its own conduct, namely its breach of a contract, as expressly authorized by Federal Circuit law, which governs "an injunction against participation in . . . an ITC investigation under section 337 of the Tariff Act." *General Protecht*, 651 F.3d at 1359. *Compare, e.g.*, *Ashlow Ltd. v. Morgan Const. Co*., 672 F.2d 371, 375 (4th Cir. 1982) (plaintiff sought "the invalidation of the [International Trade] Commission's order"); *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (plaintiff sought injunction against the inspector general of the Department of Health and Human Services); *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 224 (5th Cir. 1994) (plaintiffs sought "to enjoin the United States Coast Guard's investigation of a high-seas collision"); *Trump v. United States*, 54 F.4th 689, 693 (11th Cir. 2022) (plaintiff sought "an injunction against the government after it executed a search warrant"). Nor are the circumstances of *Interdigital Communications Inc. v. Huawei Techs. Co. Ltd*, 2013 WL 8507613 (D. Del. Mar. 14, 2013), analogous to this case. In *Interdigital*, the alleged infringers moved for an expedited schedule on their counterclaims so that the Court would issue certain rulings, not to provide relief to the alleged infringers, but to put them "in a better position in the ITC litigation." *Id.* at *1. Here, Samsung seeks relief to prevent irreparable harm to Samsung if Netlist is permitted to obtain and enforce an exclusion order in violation of its RAND commitments.

dictate the impropriety of Ericsson's pursuing its [patent-based] SEP-based injunctive relief."); *Microsoft*, 696 F.3d at 889 (holding that "the district court did not abuse its discretion in determining that Microsoft's contract-based claims, including its claim that the RAND commitment precludes injunctive relief, would, if decided in favor of Microsoft, determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany"). Once an ITC exclusion order goes into effect, Samsung would be deprived of relief it seeks in this case, including an injunction to prevent the irreparable harm that Samsung would suffer if Netlist is able to enforce such an exclusion order contrary to its contractual commitments.

This action merits an expedited schedule because only this Court has jurisdiction to provide the declaratory, injunctive, and monetary relief that Samsung seeks as a result of Netlist's breach of its contractual commitments. The ITC lacks jurisdiction over Samsung's ITC Counterclaims, which Samsung was required to remove to federal district court. 19 U.S.C. § 1337(c). And Samsung's affirmative defenses in the ITC are no substitute for Samsung's ITC Counterclaims seeking relief from this Court. As the *Realtek* court explained, Samsung's "breach of contract *affirmative defense* before the ITC is substantially different in nature than its affirmative breach of contract claim before this court" because, "[w]hile the ITC may consider [Netlist's] RAND obligations or violation thereof, it may do so *only* in the context of deciding whether [Samsung] violated Section 337 and whether an exclusion order is thus proper." 946 F. Supp. 2d at 1010 (emphasis added). Indeed, the ITC's jurisdiction is quasi-in-rem and limited to the importation of articles. 19 U.S.C. § 1337(a)(1). The ITC will not (and cannot) grant Samsung the affirmative relief it seeks for Netlist's contractual breaches (or Samsung's Sherman Act and Section 17200 claims, which extend far beyond Netlist's conduct before the ITC). *See Matter of Certain LTE- & 3G-Compliant Cellular Commc'ns Devices*, Inv. No. 337-TA-1138, 2020 WL 2468756, at *14

(I.T.C. Apr. 3, 2020) ("[N]ot one investigation has resulted in a determination that the Commission lacks jurisdiction to find a violation of section 337 merely because the asserted patent is allegedly subject to FRAND obligations or merely because a challenging party alleges a FRAND violation.") (cleaned up).

Netlist's additional arguments for resisting an expedited schedule are unpersuasive. First, Netlist mischaracterizes Samsung's ITC Counterclaims, which are based on Netlist's *own representations* regarding the alleged essentiality and scope of the asserted patents. *See* D.I. 3 ¶¶ 61–66, 72, 76–82, 125–26, 148, 182, 185, 195–98, 204–06, 235. For example, Netlist has repeatedly asserted that U.S. Patent No. 10,268,608 ("the '608 patent"), along with others included in Samsung's ITC Counterclaims, are standard essential. *See, e.g.*, *Netlist, Inc. v. Micron Tech., Inc.*, No. 21-cv-00431 (W.D. Tex. Apr. 28, 2021), D.I. 1 ¶ 17 (asserting that Netlist "committed" the asserted patents, including the '608 patent and U.S. Patent No. 9,824,035, both applicable to Samsung's counterclaims, to various applicable standards); *Netlist, Inc. v. SK hynix Inc.*, No. 6:20-cv-194 (W.D. Tex.), D.I. 33 ¶ 2 (representing that the asserted '523 patent, applicable to Samsung's ITC Counterclaims, is standard essential).[4] Netlist also has asserted that parents of the asserted patents are standard essential.

Netlist also relies on the standard-compliant functionality of Samsung's accused products in its infringement allegations in the ITC *for all asserted patents*. 1472 Investigation, Compl. ¶ 20

---

[4]    Samsung never conceded that the '608 patent was non-essential under Netlist's infringement theory in an earlier case between the parties, *Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 2:22-cv-293 (E.D. Tex.). In that case, Netlist moved for summary judgment to preclude Samsung from arguing at trial that the patents were essential under Netlist's infringement theory. *Id.*, D.I. 356. Samsung opposed, arguing that "if the accused products infringe, then the asserted patents are SEPs." *Id.*, D.I. 474 at 5. However, during the pretrial conference, Samsung agreed not to raise the issue at trial. In any event, Netlist has accused different products in the ITC than were at issue in that district court case, which raises different questions of infringement and essentiality.

("The claim charts submitted with this Complaint rely in part on functionality contained within certain standards."). Samsung disputes that its products infringe and intends to demonstrate noninfringement in the ITC investigation. But if the accused Samsung products infringe, Netlist's allegations themselves, if accepted, demonstrate essentiality, notwithstanding Netlist's self-serving protestations to the contrary. Netlist's about-face on essentiality in the ITC and this Court is nothing more than an attempt to avoid Netlist's self-incurred RAND commitment, and a tacit admission that Netlist has no credible argument that it complied with this commitment after years of failing to make a good-faith RAND offer.

In any case, Netlist's arguments regarding essentiality in this procedural filing amount to a premature attempt to argue the merits. If Netlist continues to deny essentiality under its own infringement theories, the question of essentiality is a disputed issue that will need to be resolved by this Court (whether or not the ITC reaches that issue).

Second, neither the presidential review of an ITC exclusion order, *see* 19 U.S.C. § 1337(j), nor the ITC's public interest inquiry, *id.* § 1337(c), are substitutes for the counterclaims that Samsung is entitled to bring under Section 1337(c). Section 1337(j) permits the President to veto an ITC exclusion order only on "policy reasons," not legal grounds. And the ITC's public interest analysis focuses only on "*public* health and welfare," not whether the complainant's own conduct precludes relief. 19 U.S.C. § 1337(c) (emphasis added). Thus, the narrow presidential review and public interest inquiry are fundamentally different from litigating Samsung's RAND breach of contract claims (in addition to antitrust and unfair competition claims) in this Court. Indeed, only this Court has jurisdiction to provide the declaratory, injunctive, and monetary relief that Samsung seeks as a result of Netlist's breach of its contractual commitments.

Third, the Court should reject Netlist's request to stay Samsung's ITC Counterclaims until the conclusion of the ITC investigation. As an initial matter, Netlist's request is belied by its recent filing of mirror-image declaratory judgement claims in the Eastern District of Texas.[5] *See Netlist, Inc. v. Samsung Electronics, Co., Ltd.*, No. 2:25-cv-748 (E.D. Tex.), D.I. 48 (seeking, *inter alia*, "a declaration that Netlist is not liable for breach of contract under JEDEC Patent Policy by demanding unreasonable and discriminatory royalties for a license to standard-essential patents"). The request also fails for the same reasons that an expedited schedule is appropriate: Because Samsung seeks relief based in part on Netlist's attempt to obtain and enforce an ITC exclusion order in violation of its RAND commitments, a stay would deprive Samsung of its contractual rights and remedies. *See Ericsson*, 120 F.4th at 878; *Microsoft*, 696 F.3d at 889. Indeed, the *Realtek* court denied a similar stay request by the patentee in that case. 946 F. Supp. 3d at 1010. As in that case, Netlist's "conduct in bringing the Section 337 action, which carries with it the threat of an exclusion order and thus increases [Netlist's] bargaining power in a licensing negotiation, necessitates a speedy resolution of the RAND issues by this court." *Id.* Netlist cites no authority in which courts stayed a RAND breach of contract claim during a co-pending infringement proceeding, focusing instead on antitrust cases.[6] But here, Samsung's Sherman Act and

---

[5]    Netlist's request for the Court to stay this action is also belied by Netlist's rejection of Samsung's offer to stay its declaratory judgment suits in this District in exchange for a stay of Netlist's infringement suits in Texas.

[6]    Netlist suggests that the Court should stay Samsung's antitrust claims but cites no case where, as here, a court stayed an antitrust claim that overlapped with a RAND breach of contract claim. Netlist is also wrong that the ITC case could moot Samsung's antitrust claims, which extend beyond Netlist's conduct at the ITC and include, for example, Netlist's misconduct in connection with patents not asserted at the ITC. Courts often deny stays of patent-based antitrust claims under these circumstances, where the antitrust claims will not be mooted by the resolution of the patent claims. *See, e.g.*, *Netflix, Inc. v. Blockbuster, Inc.*, 2006 WL 2458717, at *10 (N.D. Cal. Aug. 22, 2006) ("It will be more efficient in this action to conduct discovery and pretrial proceedings together. The issues overlap greatly.").

Section 17200 claims substantially overlap with its RAND contract claims, and it therefore would be most efficient for all claims to proceed together.

Accordingly, Samsung respectfully requests that the Court set a scheduling conference and enter Samsung's proposed schedule, attached hereto as **Exhibit 1**. This schedule is based upon (and parallels) the schedule for Netlist's ITC investigation, aligning the schedules of the two actions so that this Court can resolve necessary issues related to Samsung's RAND breach of contract claims, such as whether the patents asserted in the ITC are essential, and the appropriate relief for any breach. Specifically, the evidentiary hearing in the ITC will occur in late November and early December 2026, and the ITC's Initial Determination, which will determine whether Samsung has infringed the asserted patents and whether an exclusion order should issue, is scheduled for May 3, 2027. Any such exclusion order would take effect on the target date, scheduled for September 3, 2027.

Samsung's proposed schedule for its ITC Counterclaims requests that trial be set for April 2027. Far from presenting issues to this Court prematurely, as Netlist argues, Samsung's proposed trial date would be several months after the parties have crystallized their positions and presented their evidence to the ITC but would be before any exclusion order would take effect, allowing this Court to order the requested relief before any ITC remedy would take effect.

**Netlist's Position**

Netlist's date to answer or otherwise respond is February 26, 2026. On that date, Netlist will file a motion to dismiss all claims with prejudice and a motion to stay discovery pending the conclusion of the ITC proceedings or in the alternative pending the decision on the motion to dismiss. Such a stay is accepted procedure in patent-based antitrust claims, especially those in which the underlying action that is the predicate for the antitrust claims is pending in another forum

10

and may render the antitrust claims moot if the patents are not essential and not infringed (as Samsung contends in the ITC), or not essential but still infringed (as Netlist contends).  As detailed below, Samsung's complaint involves significant issues of separation of powers and there is compelling evidence that it is brought for an improper purpose, given that all parties agree the patents in the ITC are not essential.  Netlist respectfully requests that the Court consider the motions before setting a schedule in this case.

Samsung's request for an expedited schedule should be denied. Well established precedent, including in the Third Circuit, bars the type of equitable remedy Samsung seeks and is using as a basis for the expedited schedule—the *de jure* and *de facto* suspension of the ITC's Article II remedial authority.  There are also significant indica that this is not a good faith litigation.

As one crisp example, Samsung is bringing competition claims based on allegations that the '608 patent in the ITC investigation is JEDEC essential.  Samsung already conceded that the '608 patent is not JEDEC essential in a related litigation, the jury found the patent infringed, and judgment was entered on the basis that Samsung infringed a non-essential patent.  As another example,  Netlist's Complaint in the ITC expressly states that the "none of the Asserted Claims is standard-essential." *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof,* Inv. No. 337-TA-1472, Complaint, ¶ 20 (Sept. 30, 2025).  Samsung does not contend otherwise. It has asserted in this Court that Netlist's patents do not read on any standard. *See, e.g., Samsung Electronics Co. LTD., v. Netlist, Inc.* Case No. 1:25-cv-01371-UNA (Nov. 11, 2025), Dkt. 1 ¶ 64 ("Samsung seeks declarations that Samsung's DIMMs that comply with the DDR5 standards or any standard requiring materially similar functionality ('Samsung DDR5 DIMMs'), do not infringe the '035 patent."). Similarly, Samsung does not contend in the ITC action that Netlist's patents are standard essential. Instead, it claims that the

patents are non-infringed. *See id.*, Respondent's Response to Complaint, Inv. No. 337-TA-1472 ¶ 2 (February 4, 2026) ("Samsung's ITC Response") ("Samsung denies that it or any of its products have infringed any valid and enforceable claim of any of Netlist's patents.").  Under JEDEC (the standards body at issue in the Complaint), a patent is only essential and subject to a RAND obligation if it is "***necessarily be infringed*** by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard." JEDEC Manual No. 21T § 8.2.4, at 31.  Netlist respectfully requests that the Court consider the motion to dismiss and motion to stay that will be shortly filed before making a determination on a schedule.

As yet another example of the improper nature of this lawsuit, Samsung has represented to the ITC that it is not using the counterclaims to impede the ITC investigation.  But before this Court, Samsung announces the exact opposite.  It wants an injunction barring any exclusion order from taking effect.  In response to a letter from Netlist to the ITC flagging that Samsung was attempting to interfere with the ITC proceeding via Samsung's counterclaims, Samsung represented that it would not use this case to interfere with the ITC: "the merits of Samsung's counterclaims will be litigated in, and determined by, the district court, and "shall not delay or affect" the proceedings in this Investigation. 19 U.S.C. § 1337(c)."  *Certain Dynamic Random Access Memory (DRAM) Devices, Products Containing the Same, and Components Thereof,* Inv. No. 337-TA-1472, Respondent's Response to Complaint's January 7, 2026 Letter (Jan. 12, 2026).

Moreover, even if the patents were standard essential, the ITC has exclusive jurisdiction to determine whether Netlist is entitled to a violation finding for infringement and issuing a remedy against Samsung that includes an exclusion order. Conversely, it also has the ability to make a no-violation finding against the same patents—Samsung's request for an expedited schedule is not

only improper and wholly unnecessary but duplicative and undermines the ability of the ITC to make a ruling on matters properly before it. This is nothing more than an attempt to impose substantial burdens and expenses on Netlist to punish Netlist for exercising its First Amendment right to enforce its patents in the ITC. Judge Andrews rejected similar requests to run ahead of ongoing ITC proceedings:

> The gist of the request is that each Defendant will be harmed if its products are excluded from the U.S. by the ITC, that the ITC cannot set a FRAND rate, and that the Plaintiff will not offer it a FRAND rate although it has an obligation to do so. . . . It does not seem to me like a very practicable idea to try to race to a partial judgment here so that each defendant will be in a better position in the ITC litigation. Therefore, I will deny the motion for expedited discovery and trial in the two cases.

*See Interdigital Commc'ns Inc. v. Huawei Techs. Co. Ltd*, No. CV 13-8-RGA, 2013 WL 8507613, at *1 (D. Del. Mar. 14, 2013).

The Court should reject Samsung's request for an expedited schedule for the following reasons.

First, Samsung's declaratory relief claim and request for an expedited relief is an improper attempt to interfere in an ongoing ITC action. Section 337 gives the ITC exclusive jurisdiction to investigate and remedy unfair acts in the importation of articles into the United States. 19 U.S.C. § 1337(d) and (g). The Third Circuit bars district courts from interfering in ongoing Article II investigations. For example, in *Univ. of Med. and Dentistry of N.J.,* a plaintiff sought to enjoin the US Department of Health and Human Services from conducting an investigation. The Third Circuit affirmed the denial of the injunction, holding that the district court lacked subject matter jurisdiction given there had been no final agency action. *Univ. of Med. and Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) ("[J]udicial proceedings are appropriate only after the investigation has led to enforcement, because judicial supervision of agency decisions to

13

investigate might hopelessly entangle the courts in areas that would prove to be unmanageable and would certainly throw great amounts of sand into the gears of the administrative process.").

Likewise, a court lacks jurisdiction to review or impede an executive branch investigation that is not yet complete. *See, e.g., Veldhoen v. U.S. Coast Guard,* 35 F.3d 222, 225 (5th Cir. 1994) ("An agency's initiation of an investigation does not constitute final agency action" subject to judicial review. "Normally, the plaintiff must await resolution of the agency's inquiry and challenge the final agency decision."); *cf Trump v. United States*, 54 F.4th 689, 701 (11th Cir. 2022) (the judiciary does not have "license to interfere in an ongoing investigation."). As it relates specifically to the ITC, the Fourth Circuit has barred a district court from issuing an order preventing the ITC from enforcing its remedial orders because the district court held the patent invalid.  The Fourth Circuit held that "there is no jurisdiction in the district court to review actions of the Commission or to direct the entry of articles into this country from abroad." *See Ashlow Ltd. v. Morgan Const. Co*., 672 F.2d 371, 375 (4th Cir. 1982) (A "district court has no jurisdiction over the importation of articles in commerce.").

While Samsung has insisted before the ITC and now this Court that its counterclaims would not impede with the ITC's investigation, its request for an expedited schedule would do just that. Samsung is asking this Court to declare that exclusionary order is improper before the ITC has had the opportunity to consider what remedy is appropriate or whether the patents at issue read on any standard. Specifically, Samsung has requested a trial in April of 2027 in this Court whereas, under the current schedule, the ITC will not make its final determination until September 2027 at the earliest.

If Samsung believes that an exclusion order would be improper in the ITC because of issues raised in its competition law claims, its sole remedy is to present that argument to the ITC, to seek

review of that decision through the Executive Branch, and then appeal that decision to the Federal

Circuit.

> Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5. 19 U.S.C. § 1337(a).

The ITC has made clear that it has the capacity to make the determination of whether an

exclusion order is proper based on RAND allegations raised in the Complaint. *See, e.g., In the*

*Matter of Certain Lte- & 3g-Compliant Cellular Commc'ns Devices Analysis & Findings with*

*Respect to Recommendation on the Pub. Int., & Recommendation on Remedy & Bond*, USITC Inv.

No. 337-TA-1138, n.7 (Apr. 3, 2020) ("FRAND obligation implicate the statutory public interest

factors."); *see also In the Matter of Certain Umts & Lte Cellular Commc'n Modules & Prods.*

*Containing the Same Ord. No. 11*, USITC Inv. No. 337-TA-1240 (Sept. 29, 2021) ("And there is

nothing that prohibits a SEP owner, under ETSI or otherwise, from bringing an ITC case seeking

an exclusion order, nor prohibiting the ITC from granting an exclusion order covering SEPs.").

At the moment there is no exclusion order. There is no final agency action. But an

investigation has been instituted. As a result, this lawsuit is presently nothing more than a collateral

attack on Netlist's First Amendment right to petition, and an attempt to evade the ITC's and Federal

Circuit's exclusive jurisdiction. *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc*., 508

U.S. 49, 56 (1993) (Under the First Amendment, "[t]hose who petition government for redress are

generally immune from . . . liability.").

Second, as noted above, the premise of Samsung's antitrust, unfair competition, and breach

of contract claim has no legal basis. Neither Netlist nor Samsung contend that any of the patents

at issue are standard essential. The relevant Standard Setting Organization that is the subject of

the complaint is JEDEC.  JEDEC maintains that a RAND obligation exists as to "Essential Patent Claims."

> **Essential Patent Claims:** Those Patent claims the use of which would ***necessarily be infringed*** by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard.

JEDEC Manual No. 21T § 8.2.4, at 31. A RAND obligation only exists as to patent claims that are "necessarily infringed" by "required portions of a final approved JEDEC standard." *Id*. Samsung does not allege any specific required portion of a JEDEC standard the patents in the ITC are essential to or that it implements. D.I. 1-1 ¶ 32. To the contrary, before the ITC, Samsung claims it does not infringe. If it does not infringe, the patents are per se not subject to a RAND obligation. Likewise, because the RAND obligation only applies to what is necessary to comply with "required portions" of a JEDEC standard, Samsung can still infringe the Netlist patents even if they are not essential. Samsung's complaint does not allege that the only things in its products that are the subject of the investigation in the ITC are "required" by a specific JEDEC standard. Contrary to Samsung's assertion, the fact that Netlist's claim charts in the ITC cite to portions of the standard is of no moment. Claims are standard essential only if "***all implementations*** of a standard infringe the claim' and the 'patent ***covers every possible implementation of a standard***.'" *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022). Thus, a plaintiff's "mere reliance on portions of the [a] standard in its infringement contentions for a claim does not necessarily require that the claim be standard-essential." *In re Innovatio IP Ventures*, *LLC Pat. Litig.*, 956 F. Supp. 2d 925, 940 (N.D. Ill. 2013).

As noted above, one of the patents at issue in the ITC proceeding is U.S. Patent 10,268,608 (the "'608 Patent"). In a prior litigation both parties took the position that the '608 patent was "not standard essential." *Netlist, Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America,*

*Inc., Samsung Semiconductor, Inc*., No. 2:22-cv-00293-JRG, Order, Dkt. No. 818 at 2 (E.D. Tex. Nov. 6, 2024). Thus, the Court "conduct[ed] trial in [that] case as exclusively dealing with non-standard essential patents." *Id.* A jury later found that Samsung had infringed the '608 patent. *Id.,* Dkt. 847. Samsung's Complaint also alleges that Netlist improperly failed to disclose the 12,308,087 (the "'087 patent") as standard essential. D.I. 1-1 ¶ 91. But in the prior litigation involving the '087 patent's parents, neither party asserted that they are standard essential, and Samsung did not raise a defense based on standard essentiality as to those patents. *Netlist, Inc. v. Samsung Electronics Co., Ltd.,* No. 2:22-cv-00463-JRG, Order, Dkt. No. 379, at 1 (E.D. Tex. Nov. 6, 2024) (noting Samsung did not raise any equitable relief relating to the '060 and '160 patents accused of infringing the HBM products). Samsung similarly alleges that Netlist failed to disclose the U.S. Patent No. 12,373,366 ("the '366 patent"), D.I. 1-1 ¶ 87, but the Eastern District of Texas found that parent patents to the'366 patent were infringed by Samsung and not standard essential. *Netlist, Inc. v. Samsung Electronics Co., Ltd.,* No. 2:22-cv-00463-JRG, Order, Dkt. Nos. 427, 479 (E.D. Tex. Nov. 6, 2024).

None of the cases Samsung cites are on point. *Telefonaktiebolaget TM Ericsson v. Lenovo (United States), Inc.*, 120 F.4th 864, 878 (Fed. Cir. 2024), *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884–85 (9th Cir. 2012), and *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1005–10 (N.D. Cal. 2013) involved patents the deciding court treated as indisputably standard essential. In *Realtek*, neither party disputed that the patent holder was obligated to license its patents on FRAND terms, *Realtek Semiconductor Corp*., 946 F. Supp. 2d at 1006, and the defendant in the ITC proceeding sought an order from the district court determining the FRAND rate, a remedy that is not available in the ITC. Here, neither Samsung or Netlist are claiming essentiality, and Samsung is not asking this Court to set a FRAND rate. Instead, it is asking this

Court to declare that an exclusion order would be unlawful, which would directly interfere with the ITC. Indeed, Samsung contends that, "[i]f Netlist continues to deny essentiality under its own infringement theories, that is a disputed issue that will need to be decided by this Court." But that issue is squarely before the ITC. Unlike the plaintiff in *Realtek,* Samsung is essentially asking this Court to determine whether an exclusion order would be proper based on the allegations Netlist has presented to the ITC, which would clearly intrude on the ITC's exclusive jurisdiction to issue exclusion orders.[7]

*Ericsson* and *Microsoft* are even less helpful to Samsung since they involved enjoining foreign proceedings, not an Article II investigation.[8] Samsung's reliance on *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011), *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1326–27 (Fed. Cir. 2000), and *Nippon Shinyaku Co., Ltd. v. Sarepta Therapeutics, Inc.*, 24 F.4th 998, 1001 (Fed. Cir. 2022) are equally inapposite. Those cases involve forum selection clauses and stand for the unremarkable proposition that a party can be enjoined from pursuing an ITC litigation where they agreed to litigate the dispute in a different forum. Netlist made no such agreement here, and unlike in those cases, Samsung is asking this Court to rule on the merits of whether an exclusionary order is proper before the ITC has had an opportunity to address this question.

---

[7]    Samsung also fails to explain how this Court could possibly resolve the question of whether the patents are standard essential given that its proposed schedule does not include infringement contentions, a *Markmen* hearing, or any opportunity for the Court to determine whether Samsung infringes. This shows why the present case should be stayed until the ITC proceedings are complete.

[8]    While Samsung claims that enjoining the enforcement of a domestic tribunal should be less onerous since it does not raise comity concerns, this is wrong. The ITC is part of the executive branch. Thus, Samsung's suit invites this Court to violate separation of powers, which is grounded in the Constitution, unlike principles of international comity which are grounded in federal common law and are discretionary. *Remington Rand Corp. v. Bus. Sys. Inc*., 830 F.2d 1260, 1266 (3d Cir. 1987) ("[T]he grant or denial of [international] comity is discretionary.").

Third, even if the patents at issue were standard essential, there is no need for this Court to get out ahead of the ITC's investigation. Contrary to Samsung's assertion, it faces no "Hobson's choice" here. To the extent it is not already precluded from doing so based on res judicata or issue preclusion, Samsung is free to argue in the ITC litigations that the patents at issue are standard essential, and the ITC can consider this fact when deciding to grant an exclusion order. *See, e.g., In the Matter of Certain Lte- & 3g-Compliant Cellular Commc'ns Devices Analysis & Findings with Respect to Recommendation on the Pub. Int., & Recommendation on Remedy & Bond*, USITC Inv. No. 337-TA-1138, n.7 (Apr. 3, 2020) ("FRAND obligation implicate the statutory public interest factors."). Indeed, Samsung's ITC Response argues that an exclusion order should not issue because Netlist breached its FRAND obligations. Samsung's ITC Response ¶ 223 ("Netlist is equitably estopped from seeking exclusionary relief based on the Asserted Patents because Netlist falsely claimed that it would license its alleged SEPs on RAND terms to lock in the industry to certain JEDEC standards."); *id.* ¶ 224 ("Netlist's conduct of misleading JEDEC and its members into believing that it would disclose its alleged SEPs, including some or all of the Asserted Patents, and license them on RAND terms, only to then repudiate its commitment and demand supra-RAND rates for a license to those patents, amounts to unclean hands, rendering those Asserted Patents unenforceable.").

Even if an exclusion order issues, Samsung is free to seek review from the President of the United States under 19 C.F.R. § 210.42(h)(6), as Apple successfully did when the Obama administration vetoed an exclusion order because the patents at issue were standard essential. August 3, 2013 Letter from the United States Trade Representative. What Samsung is not free to do is circumvent these review procedures and interfere with the ITC's exclusive jurisdiction and the President's Article II powers.

Fourth, Samsung's request for declaratory relief is premature until the patent claims in the ITC have been adjudicated. Samsung's antitrust and unfair competition claim are premised on the allegation that Netlist has harmed competition by refusing to license essential patents on RAND terms. But this requires a finding that the patents are actually standard essential. *See, e.g., Apple v. Samsung*, 2011 WL 4948567, *4 n.6 (N.D. Cal. Oct. 18, 2011) ("If, as Apple alleges, some Samsung patents are not essential to the standard, it will likely be difficult for Apple to establish that Samsung's conduct has antitrust implications") (dismissing antitrust claims); *see also Orion Elec. Co., Ltd. v. Funai Elec. Co., Ltd*., 2002 WL 377541, at *6 (S.D.N.Y. Mar. 11, 2002) ("[I]f the patents, as construed by a court, do not allow [the patentee] to exclude competitors from the relevant markets, then [the patentee] does not have market power[.]"). Likewise, Samsung cannot establish that Netlist has breached any contractual commitment under JEDEC to license essential patents on FRAND terms absent a finding that any of the patents are in fact standard essential. Yet Samsung's proposed expedited schedule would require this Court to adjudicate the antitrust claims before the ITC has made any findings as to whether the patents have been infringed and on what basis. Specifically, Samsung has requested a trial in April of 2027 whereas under the current schedule, the ITC will not make its final determination until September 2027 at the earliest.

This is not only non-sensical, it is contrary to well established standard practice in patent cases. Courts in this district routinely "stay[] antitrust litigation where there was a possibility that the resolution of underlying patent claims could moot, narrow, or otherwise simplify the antitrust claims." *Apotex, Inc. v. Senju Pharm. Co.,* 921 F. Supp. 2d 308, 314 (D. Del. 2013); *see also Eagle Pharms., Inc. v. Eli Lilly & Co.*, No. CV 18-1121- MSG, 2018 WL 6201704, at *2 (D. Del. Nov. 27, 2018) ("[I]t is common practice for courts to stay an antitrust case until after resolution of a related patent case."); *Eurand Inc. v. Mylan Pharm. Inc*., Civ. No. 08–889, 2009 WL 3172197, at *2 (D.

20

Del. Oct. 1, 2009) (staying discovery on antitrust counterclaims because those claims "may be rendered moot by resolution of the patent infringement issues."). Such is the case here. If the ITC finds that the patents at issue are not standard essential, then this would moot Samsung's antitrust claims before this Court.

Finally, Samsung's proposed expedited schedule would substantially prejudice Netlist. As numerous courts have recognized "antitrust claims are notoriously complex" and typically require lengthy and expensive discovery. *DSM IP Assets, B.V. v. Honeywell Int'l, Inc*., No. CV 23-675-WCB, 2024 WL 639991, at *5 (D. Del. Feb. 15, 2024); *see also Resco Prods., Inc. v. Bosai Mins. Grp. Co*., No. CIV.A. 06-235, 2010 WL 2331069, at *7 (W.D. Pa. June 4, 2010) ("The pretrial discovery phase is lengthy and complicated in private antitrust cases."). Such cases often take years to resolve. *See, e.g., In re Capacitors Antitrust Litig.,* No. 3:14-CV-03264-JD, 2018 WL 4790575, at *4 (N.D. Cal. Sept. 21, 2018) ("[C]omplex antitrust cases like this one often take years to resolve through settlement, trial, or appeal."); 24 Am. Jur. Trials 1 ("[A]n ordinary antitrust case is likely to take five or six years of vigorous litigation to reach a final judgment."); Daniel A. Crane, Optimizing Private Antitrust Enforcement, 63 VAND. L. REV. 675, 692 (2010) (noting that the average antitrust case today takes six years from filing to disposition). Under Samsung's proposal, however, discovery would close in just a few months, and trial would occur in a little over a year. Samsung cites no authority that supports imposing such an abbreviated schedule in a complex antitrust case. To do so, would place an enormous burden on Netlist and deprive it of its due process rights. It would also have chilling effect on the First Amendment right of patent holders to seek exclusion orders in the ITC.

As Netlist will explain in greater detail in its forthcoming motion to dismiss and stay, the Court should defer issuing a schedule until Netlist's motions are decided. To the extent the Court

is inclined to issue a schedule now, however, it should issue a schedule that is appropriate to complex antitrust cases as set forth in Netlist's proposal in Exhibit 2.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

SHAW KELLER LLP

*/s/ Rodger D. Smith II*
Rodger D. Smith II (No. 3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com

OF COUNSEL:

Brian Nester
Peter Swanson
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

Thomas E. Garten
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-6000

*Attorneys for Counterclaim Plaintiff*

February 5, 2026

*/s/ Virginia K. Lynch*
Karen E. Keller (No. 4489)
Virginia K. Lynch (No. 7423)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
glynch@shawkeller.com

OF COUNSEL:

Andrew J. Strabone
Michael Tezyan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Blair A. Silver
IRELL & MANELLA LLP
750 17th Street NW, Suite 850
Washington, DC 20006
(202) 777-6500

Daniel E. Yonan
Sterne Kessler Goldstein & Fox PLLC
1101 K Street NW
10th Floor
Washington, DC 20005

*Attorneys for Counterclaim Defendant Netlist, Inc.*

## <u>EXHIBIT 1</u>

### SAMSUNG'S PROPOSED SCHEDULE

| EVENT | DEADLINE |
| --- | --- |
| Initial disclosures | 14 days after entry of Scheduling Order |
| Application to Court for Protective Order | 21 days after entry of scheduling Order |
| Joinder of other parties and amendment of pleadings | August 31, 2026 |
| Document production substantially complete | September 11, 2026 |
| Interim Status Report | September 25, 2026 |
| Discovery cut-off | October 9, 2026 |
| Opening expert reports | October 30, 2026 |
| Rebuttal expert reports | November 20, 2026 |
| Reply expert reports | December 11, 2026 |
| Expert depositions completed | January 8, 2027 |
| Dispositive and *Daubert* motions | January 19, 2027 |
| Hearing on Dispositive and *Daubert* motions | February 26, 2027 |
| Final Pretrial Conference | March 26, 2027 |
| Jury trial | April 2027 |

**EXHIBIT 2**

**NETLIST'S PROPOSED SCHEDULE**

| EVENT | DEADLINE |
|---|---|
| Initial disclosures | May 3, 2027 |
| Application to Court for Protective Order | April 23, 2027 |
| Joinder of other parties and amendment of pleadings | October 4, 2027 |
| Document production substantially complete | February 7, 2028 |
| Interim Status Report | March 9, 2028 |
| Discovery cut-off | April 10, 2028 |
| Opening expert reports | May 9, 2028 |
| Rebuttal expert reports | June 9, 2028 |
| Reply expert reports | June 30, 2028 |
| Expert depositions completed | August 9, 2028 |
| Dispositive and *Daubert* motions | September 15, 2028 |
| Hearing on Dispositive and *Daubert* motions | October 6, 2028 |
| Final Pretrial Conference | November 6, 2028 |
| Jury trial | December 2028 |