IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1589-JLH |
| | ) | |
| NETLIST, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**DEFENDANT NETLIST, INC'S MOTION TO DISMISS AND MOTION TO STRIKE CALIFORNIA STATE LAW CLAIM UNDER CALIFORNIA'S ANTI-SLAPP LAW**

OF COUNSEL:
Andrew J. Strabone
Michael Tezyan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Blair A. Silver
Daniel E. Yonan
IRELL & MANELLA LLP
750 17th Street NW, Suite 850
Washington, DC 20006
(202) 777-6500

Dated: February 26, 2026

Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Netlist, Inc.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

STAGE AND NATURE OF THE PROCEEDINGS ..................................................2

SUMMARY OF ARGUMENT ................................................................................4

STATEMENT OF FACTS AND ARUGMENT .........................................................6

    I.     SAMSUNG'S CLAIMS ARE ALL BARRED UNDER ISSUE PRECLUSION.........6

    II.    SAMSUNG HAS NOT STATED A SHERMAN ACT SECTION 2 CLAIM ............8

        A.    Samsung Has not Alleged Antitrust Injury........................................8

        B.    Samsung Has Not Alleged a Cognizable Market or Market Power ....................9

        C.    Samsung Has Not Alleged Exclusionary Conduct .............................................12

            1.    Samsung Has Not Adequately Alleged that Netlist Defrauded JEDEC ......12

            2.    Samsung's Sham Litigation Claim is Barred Under Noerr-Pennington ......14

    III.   SAMSUNG'S UCL CLAIM SHOULD BE STRICKEN OR DISMISSED...............16

    IV.   SAMSUNG HAS NOT PROPERLY ALLEGED BREACH OF CONTRACT .........17

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Apartment v. City of Santa Monica,*
    41 Cal. 4th 1232 (2007) .........................................................................................17

*Apple v. Samsung,*
    2011 WL 4948567 (N.D. Cal. Oct. 18, 2011).........................................................11

*Apple, Inc. v. Samsung Elecs. Co.,*
    920 F. Supp. 2d 1116 (N.D. Cal. 2013) .................................................................14

*Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.,*
    185 F.3d 154 (3d Cir. 1999) ...................................................................................15

*Ashe v. Swenson,*
    397 U.S. 436 (1970)..................................................................................................7

*Ashlow Ltd. v. Morgan Const. Co.,*
    672 F.2d 371 (4th Cir. 1982) ..................................................................................19

*Atl. Richfield Co. v. USA Petroleum Co.,*
    495 U.S. 328 (1990)..................................................................................................8

*Broadcom Corp. v. Qualcomm Inc.,*
    501 F.3d 297 (3d Cir. 2007)........................................................................4, 12, 13

*Brunswick Corp. v. Riegel Textile,*
    752 F.2d 261 (7th Cir. 1984) ..................................................................................11

*Certain Lte- and 3g-Compliant Devices,*
    Inv. No. 337-TA-1138, 2020 WL 2468756 (Apr. 3, 2020) ...................................20

*Chin v. Chrysler LLC,*
    538 F.3d 272 (3d Cir. 2008)...................................................................................18

*Clapper v. Amnesty Int'l,*
    568 U.S. 398 (2013)................................................................................................20

*Dow Chem. Co. v. U.S.,*
    226 F.3d 1334 (Fed. Cir. 2000)................................................................................6

*Eichorn v. AT&T Corp.,*
    248 F.3d 131 (3d Cir. 2001).....................................................................................8

**Page**

*Gavin v. Club Holdings, LLC*,
  2016 WL 1298964 (D. Del. Mar. 31, 2016) ..........................................................18

*Gilead Scis. v. Abbott Lab'ys*,
  No. CV 13-2034-GMS, 2015 WL 1191129 (D. Del. Mar. 13, 2015) ....................16

*Godo Kaisha IP Bridge 1 v. TCL Commc'n*,
  2018 WL 11426956 (D. Del. Feb. 28, 2018) ........................................................10

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998) ...................................................................................6

*Huawei Techs. v. Samsung Elecs.*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) ...........................................................1, 9, 11

*Intel Corp. v. Fortress Inv. Grp.*,
  2020 WL 6390499 (N.D. Cal. July 15, 2020) .......................................................10

*Intel Corp. v. Fortress Inv. Grp.*,
  2022 WL 16756365 (9th Cir. Nov. 8, 2022) ..........................................................11

*Intell. Ventures I LLC v. Cap. One Fin.*,
  2013 WL 6682981 (E.D. Va. Dec. 18, 2013) ....................................................11, 15

*Kane v. DeLong*,
  2013 WL 1149801 (N.D. Cal. Mar. 19, 2013) .......................................................17

*Koninklijke Philips v. Thales DIS*,
  39 F.4th 1377 (Fed. Cir. 2022) ...............................................................................19

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003) ...................................................................................12

*M & M Stone Co. v. Pennsylvania*,
  388 F. App'x 156 (3d Cir. 2010) ..............................................................................7

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) .....................................................................................6

*Mitchell v. Reg'l Serv.*,
  2014 WL 12607809 (N.D. Cal. Apr. 23, 2014) .....................................................17

*Motown Rec. Co., L.P. v. Kovalcik*,
  2009 WL 455137 (E.D. Pa. Feb. 23, 2009) ...........................................................15

*Netlist, Inc. v. Micron Tech., Inc.*,
  2024 WL 396237 (E.D. Tex. Jan. 8, 2024) ..............................................................3

**Page**

*No Spill LLC v. Scepter Canada, Inc.*,
    2022 WL 1078435 (D. Kan. April 6, 2022) ............................................................... 11

*Orion Elec. v. Funai Elec.*,
    2002 WL 377541 (S.D.N.Y. Mar. 11, 2002) ........................................................... 11

*Peloro v. U.S.*,
    488 F.3d 163 (3d Cir. 2007) ..................................................................................... 7

*Philadelphia Taxi Ass'n v. Uber Techs.*,
    886 F.3d 332 (3d Cir. 2018) ..................................................................................... 8

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008) ............................................................................. 19

*Prescient Med. Holdings, LLC v. Lab'y Corporation*,
    2019 WL 635405 (D. Del. Feb. 14, 2019) .......................................................... 8, 9

*Pro. Real Est. Invs. v. Columbia Pictures*,
    508 U.S. 49 (1993) ........................................................................................... 14, 15

*In re Qualcomm Antitrust Litig.*,
    2018 WL 4110498 (N.D. Cal. Aug. 29, 2018) ..................................................... 20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) ..................................................................................... 9

*Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*,
    138 F. Supp. 3d 303 (S.D.N.Y. 2014) ................................................................... 16

*Rambus Inc. v. FTC*,
    522 F.3d 456 (D.C. Cir. 2008) ............................................................................... 13

*Realco Servs., Inc. v. Holt*,
    479 F. Supp. 880 (E.D. Pa. 1979) ......................................................................... 15

*Reifer v. Westport Ins.*,
    751 F.3d 129 (3d Cir. 2014) ................................................................................... 20

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
    2024 WL 2861865 (D.N.J. June 6, 2024) ......................................................... 15, 16

*Rothman v. Jackson*,
    49 Cal. App. 4th 1134 (1996) ................................................................................ 17

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990) ............................................................................................ 17

**Page**

*Soukup v. Law Offices,*
    39 Cal. 4th 260 (2006) ......................................................................................17

*Spokeo, Inc. v. Robins,*
    578 U.S. 338 (2016) ..........................................................................................19

*Sweet St. Deserts v. Chudleigh's Ltd.,*
    2013 WL 1389760 (E.D. Pa. Apr. 4, 2013) .....................................................15

*Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.,*
    120 F.4th 864 (Fed. Cir. 2024) ..........................................................................6

*Univ. of Med. and Dentistry v. Corrigan,*
    347 F.3d 57 (3d Cir. 2003) ...............................................................................18

*Veldhoen v. U.S. Coast Guard,*
    35 F.3d 222 (5th Cir. 1994) ..............................................................................19

*VTT Tech. v. Teledyne FLIR,*
    2025 WL 3677414 (D. Del. Dec. 18, 2025) .....................................................12

*Wilderman v. Cooper & Scully, P.C.,*
    428 F.3d 474 (3d Cir. 2005) .............................................................................20

**Statutes**

10 Del. C. § 8106(a) ...................................................................................................18

19 U.S.C. § 1337(d), (g) ............................................................................................18

Cal. Bus. & Prof. Code § 17200 .......................................................................3, 16, 17

Cal. Civ. Proc. Code § 425.16 ...................................................................................16

Civ. Proc. Code § 425.16(b)(1)..................................................................................16

Declaratory Judgment Act .........................................................................................20

Sherman Act..........................................................................................................3, 8, 9

**Rule**

19 C.F.R. § 210.42(h)(6).............................................................................................20

Fed. R. Civ. P. 9 .........................................................................................................12

Fed. R. Civ. P. 12(b)(6)..........................................................................................16, 17

**Page**

**Other Authorities**

First Amendment ................................................................................................................14, 17

Unless otherwise noted, all emphasis below is added.

## INTRODUCTION

Samsung Electronics Co. ("Samsung"), which has been held liable multiple times for both infringement and material breach of a prior licensing agreement with Netlist, is a serial infringer of Netlist Inc.'s ("Netlist") patents. Recently, Netlist filed an International Trade Commission ("USITC") enforcement proceeding to prevent Samsung's continued patent infringement. In response, Samsung brought this retaliatory suit alleging purported antitrust violations and breach of contract. The premise of Samsung's Complaint is that Netlist has supposedly defrauded JEDEC—the standard setting organization of the microelectronics industry—by refusing to license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms. In actuality, the Complaint is a baseless collateral attack on the USITC action and an attempt to relitigate issues Samsung has already litigated and lost in other forums.

As Samsung's Complaint admits, Netlist has expressly alleged in the USITC action that the asserted claims are not standard essential, and in every litigation between Samsung and Netlist so far, the court determined that Netlist's asserted patents were not standard essential. But even if they were, Samsung does not—and indeed cannot—plausibly allege that Netlist has failed to offer Samsung FRAND terms. Samsung's Complaint admits that Netlist *did* license its patents to Samsung. JDLA. D.I. 1-1 ¶ 139. Samsung does not allege that this license was not FRAND compliant. Instead, it alleges that Netlist improperly terminated the license (purportedly so it could seek non-FRAND royalties). But Samsung is precluded from making this argument because a federal district court has already found that ***Samsung*** materially breached that very license, thereby forfeiting its license rights. In addition, as explained below, Samsung has failed to plead any of the basic elements of a federal antitrust claim, and its state law breach of contract and unfair competition claims fail for the same reasons.  Samsung's claims should be dismissed.

## STAGE AND NATURE OF THE PROCEEDINGS

Netlist and Samsung were previously parties to a Joint Development License Agreement ("JDLA"). The JDLA "granted Samsung and its subsidiaries a paid-up, worldwide, non-exclusive license to all patents owned or controlled by Netlist." D.I. 1-1 ¶ 139. In exchange, Samsung agreed to supply Netlist with certain memory products on request (among other consideration). Ex. A at 1 (CDCA Jury Verdict). Samsung did not uphold its end of the bargain.

Samsung improperly refused to supply Netlist with the agreed-upon memory products, so Netlist terminated the JDLA and sued Samsung for material breach of the license (the "CDCA" Action). D.I. 1-1 ¶ 142. Samsung countered that Netlist's interpretation of the license was incorrect, and its breach allegations were a pretext to terminate the JDLA and sue Samsung for patent infringement. E.g., Ex. B at 11 ("[W]hy did Netlist file its complaint after years of supposedly repeated non-performance? The answer is simple: by terminating the JDLA and the cross-licenses contained therein, Netlist can set up a patent infringement claim[.]"). The jury rejected that argument and "interpreted the contact according to Plaintiff's proffered interpretation." Ex. C at 1-2. Samsung further "conceded that it materially breached the contract under" that interpretation. *Id.* The CDCA court then entered judgment that "Netlist terminated the JDLA pursuant to JDLA § 13.2, and Samsung's licenses and rights under the JDLA have ceased." Ex. D.

After Netlist terminated the JDLA, it offered Samsung the opportunity to take a license. Samsung did not agree. Instead, after the CDCA court granted partial summary judgment on termination, Samsung brought a declaratory judgment action in Delaware in which it attempted to collaterally attack whether its license remained intact. Ex. E ¶ 2. Thus far, Netlist has obtained favorable jury verdicts in two of its infringement suits against Samsung resulting in awards of

$303,150,000, Ex. F, and $118,000,000, Ex. G. Neither Netlist nor Samsung contended that the asserted patents in those cases were standard essential, as the EDTX court held.[1] The same was true in Netlist's litigation against Micron, the other supposed target of Netlist's alleged anticompetitive scheme.[2]

In the first EDTX case, Samsung also raised estoppel and unclean hands defenses alleging that Netlist had misled Samsung by changing its position on standard essentiality and that Netlist had breached its FRAND obligations by failing to disclose the asserted patents as essential. The EDTX court rejected both theories in a subsequent bench trial. Ex. H at 41-42 ("[T]o the extent Netlist changed its position regarding the essentiality of the '339, '918, and '054 Patents, the Court does not find that such change in position constitutes litigation misconduct."); *Id.* at 31-32 ("Samsung has not demonstrated that Netlist had a duty to disclose the '918 and '054 Patents. . .").

Despite two jury verdicts against it, Samsung's infringement has continued unabated. Accordingly, Netlist filed an USITC enforcement action seeking an exclusion order of Samsung's infringing products. Netlist's Complaint in the USITC expressly states that "none of the Asserted Claims is standard-essential." Ex. K ¶ 20. Shortly after the USITC instituted its investigation, Samsung asserted retaliatory counterclaims alleging monopolization and attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, D.I. 1-1 ¶¶ 181-202, breach of contract, *id.* ¶¶ 203-220 violations of California's Unfair Competition Law ("UCL"), *id.*

---

[1] Ex. H at 8 ("Neither party in this case asserted that any of the Asserted Patents is essential."); Ex. I at 2 ("The Parties stated on the record that [the patents] . . . are not standard essential patents.").

[2] *Netlist, Inc. v. Micron Tech., Inc.*, 2024 WL 396237, at *2 (E.D. Tex. Jan. 8, 2024) ("Both sides agree that the '060 and '160 Patents are not standard essential."); *id.* ("Micron has not met its burden of demonstrating evidence showing that the asserted ['918 and '054] patents are standard essential."); Ex. J at 2 ("Netlist explicitly disclaims that the ['912 and 417] Patents are standard essential. . . . [T]he Court found that the Asserted Patents are not standard essential.").

.

¶¶ 221-233, and seeking a declaration barring enforcement of an USITC exclusion order, *id.* ¶¶ 234-243. It then removed these claims to this Court. D.I. 1. The crux of each claim is that Netlist supposedly made false promises to JEDEC to license certain "alleged" SEPs at FRAND rates, which Netlist has allegedly refused to do before bringing enforcement actions. D.I. 1-1 ¶¶ 187-188, 197, 199, 216, 219, 226-227, 240. In the USITC, Samsung continues to raise affirmative defenses with the same predicates that are at issue here. Ex. L ¶¶ 223-224 (Feb. 3, 2026) ("Netlist falsely claimed that it would license its alleged SEPs on RAND terms to lock in the industry.").

## SUMMARY OF ARGUMENT

1.  Samsung's Complaint must be dismissed because Samsung is precluded from alleging that Netlist has violated its FRAND commitments, which is the necessary predicate for all of its claims. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (To demonstrate an antitrust claim based on an alleged "intentionally false promise to license essential proprietary technology on FRAND terms," the plaintiff must show "the patent holder's subsequent breach of that promise."). Samsung's Complaint admits that Netlist had granted Samsung a license to Netlist's patent portfolio in the JDLA. Samsung does not allege that the JDLA failed to comply with FRAND. By negotiating and excuting the JDLA with Samsung, Netlist discharged its FRAND obligations. To plead around this, Samsung alleges that Netlist improperly terminated the JDLA based on pretextual allegations of breach. But that allegation flatly contradicts and is estopped by the CDCA's judgment finding that Samsung materially breached the JDLA and declaring that the JDLA was properly terminated.

2.  Samsung's antitrust claims must also be dismissed because Samsung failed to plead antitrust injury, a cognizable market over which Netlist has monopoly power, or that Netlist engaged in anticompetitive conduct. First, with respect to antitrust injury, the Complaint admits

that Netlist entered into a license with Samsung's primary competitor, SK Hynix. But Samsung does not allege that this license was not FRAND compliant. On the contrary, Samsung complains that, because SK Hynix is getting a FRAND license and Samsung is not, Samsung is at a competitive disadvantage. But that is at best an injury to Samsung only, not to the broader market. Second, Samsung does not allege a cognizable market over which Netlist exercises market power. While Samsung contends Netlist has market power due its ownership of "alleged" SEPs, its Complaint admits that Netlist has repeatedly disavowed the standard essentiality in its infringement actions against Samsung. Samsung also alleges that these same patents are invalid, meaning they cannot give rise to market power as a matter of law. Finally, Samsung fails to allege anticompetitive conduct because (1) it has not alleged that Netlist somehow defrauded JEDEC and (2) its allegations of bad faith litigation are barred by the *Noerr-Pennington* doctrine.

3.      Samsung's state law California UCL and breach of contract claims fail for the same reason as its antitrust claims. In addition, Samsung's California UCL claim is barred under California's litigation privilege, which provides absolute immunity from liability premised on the filing of lawsuits, and should be stricken under California's Anti-SLAPP law. Samsung's breach of contract claim is barred by the statute of limitations because Samsung brought suit well more than 3 years after the alleged breach.

4.      The Court lacks jurisdiction over Samsung's claim for declaratory relief, which seeks a declaration that Netlist is barred from seeking or enforcing an exclusion order in the USITC. This is a collateral attack on the USITC's current investigation. A court may not interfere with an agency's investigation before that investigation has completed. Moreover, Samsung has no standing to seek declaratory relief. Its alleged injury depends on the USITC first determining that the asserted patents are standard essential and then issuing an exclusion order on this basis

that is then approved by the President. None of this has happened yet, and any allegation that it might is speculative, especially since Netlist has not alleged that the patents asserted in the USITC are standard essential, nor has Samsung. Finally, even if the Court has jurisdiction, it should decline to exercise it because Samsung's declaratory relief claim smacks of forum shopping.

## STATEMENT OF FACTS AND ARUGMENT

## I.    SAMSUNG'S CLAIMS ARE ALL BARRED UNDER ISSUE PRECLUSION

An "SEP holder can satisfy" its obligation to negotiate a FRAND license in good faith "by making an offer at a rate that is actually FRAND." *Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc*., 120 F.4th 864, 867 (Fed. Cir. 2024). Here, Samsung admits that Netlist licensed its patents to Samsung when the parties' signed the JDLA, and Samsung never alleges that the JDLA was not FRAND compliant. D.I. 1-1 ¶ 139. Thus, by negotiating and entering the JDLA with Samsung, Netlist discharged its FRAND obligations. Samsung just chose to forfeit its license rights when it materially breached the agreement. *See, e.g., Merrill Lynch & Co. v. Allegheny Energy, Inc*., 500 F.3d 171, 186 (2d Cir. 2007) ("[A] party's performance under a contract is excused where . . . [the other] party has committed a material breach."); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1346, 1348 (Fed. Cir. 2000) ("A material breach. . . gives rise to a right to exercise a termination provision in a contract" and seek "infringement damages"). *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998) ("A material breach of a covenant will allow the licensor to rescind the license and hold the licensee liable for infringement."). To try and plead around this, Samsung alleges that Netlist wrongly terminated the JDLA. Specifically, Samsung claims that Netlist's "breach allegations were a pretext for termination," which Samsung contends was "improper." D.I. 1-1 ¶¶ 142-43, 145; *see also id.,* ¶ 10. But Samsung is precluded from contesting the propriety or effectiveness of Netlist's termination because the parties already

litigated this issue to final judgment in CDCA, and Samsung lost.

"[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Issue preclusion applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). The record in the CDCA Action establishes each of these elements. *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) ("[I]t is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims" on a motion to dismiss).

As detailed above, the CDCA jury rejected Samsung's argument that Netlist's assertion of breach was improper and instead agreed with Netlist's interpretation of the JDLA. The Court therefore entered judgment that Samsung had materially breached, and Netlist had properly terminated, the JDLA. Ex. D. The CDCA Action thus involved the same parties, the same essential threshold issue (whether Netlist's termination was proper), and was litigated to final judgment in Netlist's favor. Samsung is accordingly precluded from contending that Netlist deprived Samsung of a FRAND license by improperly terminating the JDLA.

While Samsung alleges that Netlist has refused to offer Samsung a FRAND license after it terminated the JDLA, D.I. 1-1 ¶ 147, this allegation, even if true, cannot establish that Netlist breached its FRAND obligation. Absent any allegation by Samsung that the JDLA itself was not FRAND compliant, Netlist discharged its FRAND obligation by offering a patent license to Samsung that Samsung, not Netlist, chose to breach. Nothing in JEDEC requires a patent holder to negotiate a FRAND license with an implementer ***after the implementer has materially***

*breached a prior FRAND license.* Nor would a requirement make sense as it would allow an implementer to breach a license with impunity without any risk of facing an infringement suit.

## II.   SAMSUNG HAS NOT STATED A SHERMAN ACT SECTION 2 CLAIM

### A.  Samsung Has not Alleged Antitrust Injury

Samsung has failed to plead the "threshold" requirement of "antitrust injury." *Philadelphia Taxi Ass'n v. Uber Techs.*, 886 F.3d 332, 343 (3d Cir. 2018) (affirming dismissal). Samsung must allege that Netlist's supposed anticompetitive conduct had "a wider impact on the competitive market," not just on Samsung. *Eichorn v. AT&T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001); *see also Prescient Med. Holdings, LLC v. Lab'y Corporation*, 2019 WL 635405, at *2 (D. Del. Feb. 14, 2019) ("[T]he plaintiff must demonstrate that 'the challenged action has had an actual adverse effect on competition as a whole in the relevant market, not just on plaintiff as a competitor.'"). This is because the "antitrust laws were enacted for 'the protection of competition, not competitors.'" *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990).

Here, Samsung's alleged injury is that Netlist has not given Samsung the same terms it has given to one of Samsung's competitors, SK Hynix. D.I. 1-1 ¶¶ 29, 149. Samsung alleges that Netlist entered into a FRAND compliant license with SK Hynix, D.I. 1-1 ¶ 191, that Netlist's "discriminatory license demand to Samsung compared to SK Hynix puts Samsung at a competitive disadvantage against its competitor," D.I. 1-1 ¶ 150, and that "Samsung risks losing market share to competitors that *do not pay Netlist's supra-RAND royalty rates*," D.I. 1-1 ¶ 191.Thus, Samsung has not alleged that Netlist has failed to offer the broader market FRAND licenses. It alleges only that Netlist has failed to offer a FRAND license to Samsung specifically.

Samsung's alleged "competitive disadvantage" is at best "an injury to [Samsung's] own business interests, and is not enough by itself to establish antitrust injury." *Prescient*, 2019 WL

- 8 -

635405, at *3. Per Samsung, the DRAM market consists primarily of three competitors with SK Hynix the market leader at 38%. D.I. 1-1 ¶ 29. Thus, Netlist's supposed breach of FRAND as to Samsung alone could not have had market wide effects. *Huawei Techs. v. Samsung Elecs.,* 340 F. Supp. 3d 934, 954 (N.D. Cal. 2018) (rejecting FRAND claim because "Samsung cannot . . . explain the fact that Huawei has licensed its SEPs to other entities as part of its commitments to ETSI.").

### B.  Samsung Has Not Alleged a Cognizable Market or Market Power

To state "a Sherman Act claim under . . . § 2, a plaintiff must identify the relevant product and geographic markets and allege that the defendant exercises market power within those markets." *Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430, 435 (3d Cir. 1997) (affirming dismissal). Here, Samsung has failed to allege either.

***No  Cognizable  Market.*** An antitrust market is "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* at 436 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). A Plaintiff's failure "to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand" requires dismissal. *Id.* at 436. Here, Samsung does not define a specific antitrust market. Instead, its Complaint vaguely references "relevant markets" that would encompass a wide range of disparate, non-substitutable products. D.I. 1-1 ¶ 170. Specifically, Samsung alleges that the "relevant markets are the markets for technologies covered by Netlist's patents issued in the United States that are essential, or are alleged or declared to be essential, to the JEDEC standards." *Id*. This is not a cognizable antirust market.

A claimant cannot define a market simply by asserting that a defendant possesses SEPs (let alone "declared" or "alleged" SEPs). This is because "standards are not markets and do not represent particular products." *Godo Kaisha IP Bridge 1 v. TCL Commc'n*, 2018 WL 11426956,

at *5 (D. Del. Feb. 28, 2018). Here, Samsung "fails to identify any products, explain the geographic market for such products, the products' interchangeability, or any cross-elasticity of demand." *Id.* Moreover, except by way of non-limiting example, Samsung never identifies which specific standards are supposedly at issue or what portion of these standards Netlist patents supposedly read on. Nor does the Complaint ever state whether these standards are part of the same market, different markets, or what other JEDEC standards might be encompassed by the "Relevant Markets." D.I. ¶ 170. Samsung cannot simply lump the JEDEC standards together and claim this constitutes the relevant market or markets given that SSO standards typically cover a broad range of products that are not interchangeable. *See, e.g., Godo Kaisha IP Bridge 1*, 2018 WL 11426956, at *5 ("TCT improperly aggregates all three telecommunication standards together with no explanation of how devices complying with one of the identified standards would be in the same market . . . ."); *Intel Corp. v. Fortress Inv. Grp.*, 2020 WL 6390499, at *11 (N.D. Cal. July 15, 2020) (endorsing the view that "a single device or product alone [such as a cell phone] can encompass scores of standardized technologies"). Indeed, Samsung's Complaint acknowledges that JEDEC sets standards "for a broad range of semiconductor technologies." D.I. ¶ 32.

***No Market Power.*** Samsung has also failed to allege (and in fact pled itself out of) monopoly or market power. According to the Complaint, "Netlist launched world-wide litigation ***asserting patents it knew were invalid*** against Samsung (and the industry) and demanded anti-competitive licensing terms." D.I. 1-1 at 2; *id.* ¶ 9. While a valid patent may give rise to market power under certain circumstances, "a patent known to the trade to be invalid will not discourage competitors from making the patented product or using the patented process, and so will not confer monopoly power." *Brunswick Corp. v. Riegel Textile*, 752 F.2d 261, 265–66 (7th Cir. 1984); *see also Orion Elec. v. Funai Elec.*, 2002 WL 377541, at *6 (S.D.N.Y. Mar. 11, 2002) ("[I]f the

patents, as construed by a court, do not allow Funai to exclude competitors from the relevant markets, then Funai does not have market power."). Put differently, if Samsung's allegations of invalidity are true, then "there *is no commercial market for [Netlist's] patent portfolio*," and hence no market over which Netlist exercises power. *Intell. Ventures I LLC v. Cap. One Fin.*, 2013 WL 6682981, at *5 (E.D. Va. Dec. 18, 2013) (dismissing antitrust claims based on supposedly "weak" patents); *see also Intel Corp. v. Fortress Inv. Grp.*, 2022 WL 16756365, at *2 (9th Cir. Nov. 8, 2022) (patents could not threaten competition where they were "supposedly weak" and not "essential or otherwise functionally or economically necessary") (affirming dismissal).

Second, Samsung admits that Netlist is not taking the position that its patents are standard essential in any of its litigations against Samsung or Micron (the other supposed target of Netlist's alleged scheme). D.I. 1-1 ¶¶ 78-82. This includes the patents that Netlist has asserted against Samsung in the USITC. Accordingly, even if Netlist prevails, it would not be the case that "any manufacturer of standard-complaint devices [would] . . . need a license to Netlist's [patents]," which is the entire premise of Samsung's market power theory. D.I. 1-1 ¶ 180. Moreover, given that *Samsung* has not alleged that the patents are standard essential and valid, it cannot prevail regardless of what Netlist has alleged about its patents. *See Orion Elec. Co., Ltd.*, 2002 WL 377541, at *6 ("[A]ny claim of market power must depend upon the patents themselves, not upon the statements of the patentee."); *Apple v. Samsung*, 2011 WL 4948567, *4 n.6 (N.D. Cal. Oct. 18, 2011) ("If, as Apple alleges, some Samsung patents are not essential to the standard, it will likely be difficult for Apple to establish that Samsung's conduct has antitrust implications") (granting dismissal); *No Spill LLC v. Scepter Canada, Inc*., 2022 WL 1078435, at *7 (D. Kan. Apr. 6, 2022) (allegation that "[d]efendants *believe* that practicing the patents will be required under a forthcoming… standard" insufficient) (granting dismissal).

### C.    Samsung Has Not Alleged Exclusionary Conduct

To survive a motion to dismiss, Samsung must also allege that Netlist "engage[d] in exclusionary or predatory conduct without a valid business justification." *LePage's Inc. v. 3M*, 324 F.3d 141, 152 (3d Cir. 2003). Samsung relies on two theories: (1) Netlist supposedly defrauded JEDEC by falsely promising to license its SEPs on FRAND terms, D.I. 1-1 § IV, and (2) Netlist has supposedly asserted invalid patents in bad faith, D.I. 1-1 § VI.D. Neither theory is adequately pled.

### 1.    Samsung Has Not Adequately Alleged that Netlist Defrauded JEDEC

To demonstrate monopolization or attempted monopolization by fraud on a standard setting organization, Samsung must allege the following elements: (1) Netlist made an "intentionally false promise to license essential proprietary technology on FRAND terms," (2) JEDEC's "reliance on that promise when including the technology in a standard" and (2) Netlist's "subsequent breach of that promise." *Broadcom*, 501 F.3d at 314. As explained above, Samsung is precluded from alleging that third element is satisfied; but it also has not adequately alleged the first two elements.

First, a plaintiff cannot satisfy Rule 9 by simply alleging facts on "information and belief"; it must "set[] forth the specific facts upon which the belief is reasonably based." *VTT Tech. v. Teledyne FLIR*, 2025 WL 3677414, at *5 (D. Del. Dec. 18, 2025) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1330 (Fed. Cir. 2009)). Here, Samsung pleads virtually all aspects of Netlist's supposed scheme to defraud JEDEC on information and belief without providing any specific facts to support these allegations.  For example, to establish that Netlist had an obligation to license or disclose certain patents, Samsung alleges "[u]pon information and belief information belief" that Netlist was a member of JEDEC and the relevant committees when the standards were adopted. D.I. 1-1 ¶ 84. Then, to demonstrate deception, Samsung further alleges

"on information belief" that Netlist failed to disclose certain patents during the standard setting process. *See, e.g.,* D.I. 1-1 ¶ 91-92. For other patents, Samsung alleges that "on information belief . . . Netlist never intended to comply with the RAND commitment or other JEDEC polices." D.I. 1-1 ¶ 68; *see also id.* ¶¶ 72,77. Samsung accuses Netlist employees, "on information and belief," of attending certain JEDEC meetings solely to "take" certain ideas from other manufacturers and apply for patents that read on this same technology. D.I. 1-1 ¶ 113; *see id.* ¶¶ 94-95, 100-101, 104, 106, 108-109. But Samsung never identifies any facts that on which its supposed "information and belief" is based. In total, no fewer than 27 paragraphs of the Complaint—i.e., the entirety of Samsung's fraud theory—are predicated on unsubstantiated "information and belief."[3]

Second, even if Netlist had made a false promise, Samsung has pled no facts demonstrating JEDEC's "reliance on that promise." *Broadcom*, 501 F.3d at 314. "[I]f JEDEC, in the world that would have existed but for [the patent holder's] deception, would have standardized the very same technologies, [this] alleged deception cannot be said to have had an effect on competition in violation of the antitrust laws." *Rambus Inc. v. FTC*, 522 F.3d 456, 466–67 (D.C. Cir. 2008).

Samsung alleges only that JEDEC policy "directs that if the JEDEC board has 'a credible indication that the patent owner or applicant is unwilling or unable to grant licenses . . . on RAND terms, then the Board shall not approve the issuance of the standard' without first 'consider[ing] whether the committee used diligent efforts . . . to develop a standard that does not require the use of the Essential Patent Claim(s)." D.I. 1-1 ¶ 51. Samsung alleges no facts demonstrating that JEDEC **would** have adopted a different standard absent Netlist's supposed deception, only that it **might** have, and the "abstract possibility that [the SSO] could have chosen something different" is insufficient as a matter of law to plead the required causation in an SSO fraud case like this. *Apple,*

---

[3] D.I. 1-1 ¶¶ 68, 72, 77, 84, 90-92, 94-99, 101, 103-109, 113, 116, 148-149, 171, 298, 206-207.

*Inc. v. Samsung Elecs. Co*., 920 F. Supp. 2d 1116, 1141 (N.D. Cal. 2013).

Indeed, if anything, Samsung's allegations demonstrate that JEDEC ***did not rely*** on any FRAND representations by Netlist. For example, the Complaint alleges that "Netlist withdrew from membership in JEDEC committees JC-40, JC-42, and JC-45 in February 2015" after it submitted notice of refusals to license on FRAND terms and did not rejoin in until 2018.  D.I. 1-1 ¶¶ 73, 75. But the Complaint then alleges that, during this three-year period, JEDEC adopted the very standards that Samsung alleges Netlist is now trying to exploit knowing full well that Netlist had revoked its FRAND commitment. D.I. 1-1 ¶ 111 ("The JEDEC JC-40 . . . published the final JESD82-32 standard in December 2016."). Once again, Samsung has pled itself out of a claim.

### 2.  Samsung's Sham Litigation Claim is Barred Under *Noerr-Pennington*

Samsung also alleges that "Netlist has knowingly alleged infringement by Samsung of invalid patents." D.I. 1-1 ¶ 154. Enforcing a patent through the judicial process is protected by the First Amendment, and "those who petition government for redress are generally immune from antitrust liability" under the *Noerr-Pennington* doctrine. *Pro. Real Est. Invs. v. Columbia Pictures*, 508 U.S. 49, 55 (1993) ("*PRE*"). There is a narrow exception to *Noerr-Pennington* immunity where the litigation is merely "a sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." *PRE,* 508 U.S. at 51. The sham exception has two requirements: "[f]irst, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and second, the suit must be "an attempt to interfere directly with the business relationships of a competitor [] through the use [of] the governmental process—as opposed to the outcome of that process." *Id*. at 60-61.

Samsung's allegations fail both prongs. Starting with the second one, Samsung has not alleged that Netlist has filed suit solely "to interfere directly with the business relationships of a

competitor." *PRE*, 508 U.S. at 51. Indeed, Samsung expressly alleges that "Netlist does not compete with Samsung." D.I. 1-1 ¶ 54. That alone is fatal to Samsung's sham litigation theory. *See, e.g., Motown Rec. Co., L.P. v. Kovalcik*, 2009 WL 455137, at *5, n 47 (E.D. Pa. Feb. 23, 2009) (rejecting sham theory and granting dismissal because "[t]he Defendant is not a business competitor of Plaintiffs"); *Realco Servs., Inc. v. Holt*, 479 F. Supp. 880, 884 (E.D. Pa. 1979) (same); *Intell. Ventures I LLC*, 2013 WL 6682981, at *7 (same). Second, Samsung Complaint "affirmatively alleges that [Netlist's] purpose was to secure the *outcome* of the [judicial] process," not interfere with Samsung's business. *Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.*, 185 F.3d 154, 158, n.2 (3d Cir. 1999). Specifically, Samsung contends that Netlist is seeking an exclusion order in the USITC and demanding supposedly exorbitant licenses. D.I. 1-1 at 1-2. But an injunction is a quintessential judicial outcome, as is seeking favorable license terms via pre-suit demands. *See Sweet St. Deserts v. Chudleigh's Ltd.*, 2013 WL 1389760, at *6 (E.D. Pa. Apr. 4, 2013) ("[I]n the antitrust context, that presuit demand letters are immunized under *Noerr–Pennington*.") (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 937 (9th Cir. 2006)).

Samsung also has not satisfied the objective baselessness prong. "Given the presumption of patent validity and the burden on the patent challenger to prove invalidity by clear and convincing evidence, 'it will be a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation.'" *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, 2024 WL 2861865, at *86 (D.N.J. June 6, 2024) (quoting *Tyco Healthcare Grp. LP v. Mutual Pharm. Co., Inc.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014)). Samsung simply asserts in conclusory fashion that Netlist asserted "patents that it knew were invalid." D.I. 1-1 at 2. But Samsung does "not provide any specific allegations regarding why no reasonable litigant in [Netlist's] shoes could realistically expect to

- 15 -

prevail" in any litigation that Netlist has ever initiated against Samsung or any one else. *In re Revlimid*, 2024 WL 2861865, at \*91 (granting dismissal); *see Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 326 (S.D.N.Y. 2014) ("wholly conclusory" allegations of invalidity insufficient). Samsung's identifies a small handful of patents, which it dubs the "Notification-Signal Patents," that Samsung claims Netlist knew were invalid based on prior PTAB rulings. D.I. 1-1 ¶¶ 154-169. But it was Samsung, not Netlist, who initiated the Notification-Signal Patent litigations when it brought claims for declaratory relief on non-infringement. D.I. 1-1 ¶¶ 160, 163. Netlist simply brought counterclaims in response. *Id.* Samsung fails to explain how Netlist's *defensive* counterclaims could constitute anticompetitive vexatious litigation.

## III.    SAMSUNG'S UCL CLAIM SHOULD BE STRICKEN OR DISMISSED

Samsung's California UCL claim is subject to California's Anti-SLAPP law, Cal. Civ. Proc. Code § 425.16. *Gilead Scis. v. Abbott Lab'ys*, 2015 WL 1191129, at \*3 (D. Del. Mar. 13, 2015) (applying Anti-SLAPP immunity to California state law claims) (quoting *Davis v. Elec. Arts*, 775 F.3d 1172, 1176 (9th Cir.2015)). As this district has explained:

> An anti-SLAPP motion requires a two-step analysis . . . . First, the moving party is required to show that the conduct underlying the plaintiffs cause of action is an act arising from the defendant's constitutional rights of free speech or petition, and therefore protected. Civ. Proc. Code § 425.16(b)(1); . . . Second, if the defendant is successful at step one, the burden shifts to the plaintiff to show there is a probability it will prevail on its claim. § 425.16(b)(1). *Gilead Scis.*, 2015 WL 1191129, at \*3. At the second step, federal courts determine whether plaintiff's complaint satisfies the pleading requirements of Rule 12(b)(6). *Id.* at \*6.

Here, the first step is easily satisfied because Samsung's UCL claim is expressly predicated on Netlist's petitioning conduct, specifically "knowingly asserting invalid patents in litigation against Samsung, *supra* ¶¶ 154–169, and seeking injunctive relief against Samsung for its alleged infringement of Netlist's alleged SEPs." D.I. 1-1 ¶ 227; *see also Soukup v. Law Offices*, 39 Cal. 4th 260, 291 (2006) ("The filing of lawsuits is an aspect of the First Amendment right of petition").

The second step is also satisfied because Samsung's Complaint fails to state a claim under the UCL under Rule 12(b)(6). First, Samsung's UCL claim is predicated on the exact same theory as its federal antitrust claims, D.I. 1-1 ¶¶ 223-225, 227, so its "UCL claim fails as well." *See Mitchell v. Reg'l Serv.*, 2014 WL 12607809, at *5 (N.D. Cal. Apr. 23, 2014). Second, Samsung's UCL claims are barred under California's litigation privilege, which protects "the filing of a legal action," *Action Apartments v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007), and provides a "mantle of an absolute immunity." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1149 (1996). There is no "sham" exception to the litigation privilege, and even suits alleged to be "fraudulent, perjurious, unethical, or even illegal" are privileged. *Kane v. DeLong*, 2013 WL 1149801, at *12 n.5 (N.D. Cal. Mar. 19, 2013). Here, Samsung's UCL claim is barred because it is specifically predicated on Netlist's filing of infringement suits. D.I. 1-1 ¶ 227. The "only exception" is a claim for malicious prosecution, which Samsung does not and cannot plead. *Silberg v. Anderson*, 50 Cal. 3d 205, 216 (1990). Thus, Samsung's UCL claim must be stricken or at the very least dismissed.

## IV.    SAMSUNG HAS NOT PROPERLY ALLEGED BREACH OF CONTRACT

Samsung's claim that Netlist has breached its JEDEC commitments, D.I. 1-1 ¶¶ 203-220, should also be dismissed for multiple reasons. First, as explained in Section I, *supra*, Samsung cannot allege that Netlist has breached its FRAND obligations given that (1) Netlist granted Samsung a license in the form of JDLA, (2) Samsung does not allege this license was not FRAND compliant, and (3) the reason why this license is no longer in effect is because of Samsung's own material breach as determined by the CDCA court.

Second, Samsung admits that the JEDEC Patent Policy's FRAND obligation only applies to "Essential Patent Claims." D.I. 1-1 ¶ 45. As explained above, however, Samsung fails to allege that Netlist possesses any Essential Patent Claims. Instead, at best, Samsung pleads only that

Netlist has "alleged" that certain patents are standard essential in the past, but that cannot demonstrate that any claim is actually essential. *See supra* Section I.

Finally, even if Samsung could plead breach, its claim is barred by the statute of limitations. Federal courts exercising supplemental jurisdiction over state law claims look to the forum state's choice-of-law principles to determine the applicable limitations period. *See Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). "Under Delaware's conflict of laws rules, a statute of limitations is procedural, not substantive," meaning "Delaware law generally determines whether an action" is time barred. *Gavin v. Club Holdings, LLC*, 2016 WL 1298964, at *3 (D. Del. Mar. 31, 2016). The limitations period for breach of contract is three years. 10 Del. C. § 8106(a); *id.* § 8121. The Complaint specifically alleges that Netlist sent Samsung a notice of infringement on "October 15, 2020," shortly after terminating the JDLA. D.I. 1-1 ¶ 144. As such, Samsung's breach of contract claim accrued more than three years before this December 2025 lawsuit and is time barred.

## V.    THE COURT LACKS JURISDICTION TO GRANT DECLARATORY RELIEF

Samsung's Fifth Cause of Action seeks a declaration "That Netlist Is Barred from Seeking and/or Enforcing an USITC Exclusion Order." D.I. 1-1 ¶¶ 234-243. The Court lacks jurisdiction over this claim. The USITC is an Article II executive agency with exclusive jurisdiction to investigate and remedy unfair acts in the importation of articles into the United States. 19 U.S.C. § 1337(d), (g). The Third Circuit bars district courts from interfering in ongoing Article II investigations. *Univ. of Med. and Dentistry v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003). Likewise, a court lacks jurisdiction to review or impede an executive branch investigation that is not yet complete. *E.g., Veldhoen v. U.S. Coast Guard,* 35 F.3d 222, 225 (5th Cir. 1994) ("An agency's initiation of an investigation does not constitute final agency action" subject to judicial review; "the plaintiff must await resolution of the agency's inquiry."). This includes USITC investigations.

*See Ashlow Ltd. v. Morgan Const. Co*., 672 F.2d 371, 375 (4th Cir. 1982) (A "district court has no jurisdiction over the importation of articles in commerce."). There is no exclusion order or any final agency action, so this claim is just an attempt to evade the USITC's exclusive jurisdiction.

Moreover, Samsung lacks standing to seek a declaration barring Netlist from seeking or enforcing an USITC exclusion order. There is no pled justiciable controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1334 (Fed. Cir. 2008). For instance, Samsung claims that absent a declaration it will suffer "disruption of its business, imminent loss of profits, loss of customers and potential customers," and other harms by "the threat of injunctive relief." *see* D.I. 1-1 ¶ 242. But that just parrots the elements of damage and is insufficient to plead an actual controversy. *See Spokeo, Inc. v. Robins,* 578 U.S. 338, 338 (2016). Indeed, Samsung's complaint does not identify a single customer it has lost or any other concrete way in which it has lost business, nor that any such injury is imminent. *See Koninklijke Philips v. Thales DIS,* 39 F.4th 1377, 1380 (Fed. Cir. 2022) (refusing to enjoin USITC action where "Thales did not present any evidence that it lost customers, had customers delay purchases, or struggled to acquire new business . . . .").

Samsung's theory of purported harm is speculative. Any supposed threat that Samsung faces from an USITC exclusion order hinges on the USITC first finding that the patents at issue are standard essential (even though neither party as alleged this) and then issuing an exclusion order on this basis. Moreover, one of the accused products in the USITC is MRDIMMs, D.I. 1-1 ¶ 25; Ex. K ¶ 60, for which there currently is no JEDEC standard (nor does Samsung allege otherwise), meaning there could be no finding of standard essentiality with respect to these asserted claims. Thus, the "chain of inferences is too speculative to conclude that [Samsung] face[s] an imminent risk of injury." *See In re Qualcomm Antitrust Litig.*, 2018 WL 4110498, at *11 (N.D.

Cal. Aug. 29, 2018). Critically, the "steps of the chain involve choices by independent decisionmakers, including individuals in other branches of the government." *Id.* The Supreme Court cautioned against "standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 413 (2013).

Finally, even if the Court has jurisdiction over Samsung's declaratory relief claim, it should decline to exercise it. District courts possess a "unique and substantial discretion" to decline jurisdiction in declaratory judgment actions. *See Reifer v. Westport Ins.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995)). Courts overwhelmingly disfavor the practice of using declaratory judgment claims as a vehicle for forum shopping, as Samsung does here. *See, e.g.*, *Wilderman v. Cooper & Scully, P.C.*, 428 F.3d 474, 476 n.1 (3d Cir. 2005) ("We note that [] forum-shopping subverts the policies of the Declaratory Judgment Act."); *Id.* at 476 n.1 ("[A] district court may dismiss a declaratory judgment action that was . . . 'motivated solely by considerations of forum shopping."). Moreover, Samsung has redress besides a declaratory judgment. *Reifer*, 751 F.3d at 139 (courts should consider "the availability and relative convenience of other remedies" when deciding whether to grant declaratory relief). Samsung has raised the same arguments against an import ban before the USITC, which has capacity to determine whether an exclusion order is proper based on FRAND allegations raised in the Complaint. *Certain Lte- and 3g-Compliant Devices*, Inv. No. 337-TA-1138, 2020 WL 2468756 (Apr. 3, 2020) ("FRAND obligation implicate the statutory public interest factors."). Then, if an exclusion order issues, Samsung may also seek the review of the President. 19 C.F.R. § 210.42(h)(6).

## <u>CONCLUSION</u>

The Complaint should be dismissed with prejudice for the above reasons.

/s/ Emily S. DiBenedetto
Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Netlist, Inc.*

OF COUNSEL:
Andrew J. Strabone
Michael Tezyan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Blair A. Silver
Daniel E. Yonan
IRELL & MANELLA LLP
750 17th Street NW, Suite 850
Washington, DC 20006
(202) 777-6500

Dated: February 26, 2026